# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| BRUCE TERRELL DAVIS, JR., <br><br> Plaintiff, <br><br> v. <br><br> SUSAN PETERS and JEAN LUTSEY, <br><br> Defendants. | Case No. 18-CV-465-JPS <br><br><br> **ORDER** |

Plaintiff, a prisoner incarcerated at Green Bay Correctional Institution ("GBCI"), was allowed to proceed on claims of deliberate indifference to his serious medical needs, in violation of the Eighth Amendment, against nurse Susan Peters ("Peters") and health services manager Jean Lutsey ("Lutsey"), both employed at GBCI. (Docket #7). Defendants filed motions for summary judgment on April 22, 2019. (Docket #30) (Lutsey's motion); (Docket #38) (Peters' motion). Along with their motions, Defendants filed supporting statements of fact. (Docket #32) (Lutsey's statement); (Docket #41) (Peters' statement).

According to those statements, the material facts are as follows. Plaintiff has complained of back pain for some years. In May 2017, while Plaintiff was incarcerated at Fox Lake Correctional Institution ("Fox Lake"), a Dr. Mann determined that Plaintiff did not need back surgery, but recommended that he see a physiatrist (something like a doctor of physical therapy). A physiatry appointment was scheduled, but then cancelled because of Plaintiff's transfer to GBCI.

Plaintiff was transferred to GBCI in June 2017, and that is when his contact with Defendants began. Peters became Plaintiff's primary care

provider at GBCI. This included managing his medications and other avenues to relieve his back pain. This was quite a laborious task with Plaintiff, as he constantly wanted to start and stop different medications and increase or decrease their dosages. Plaintiff also repeatedly requested narcotic pain medication, but this was refused. Still, Peters engaged with Plaintiff extensively, adjusting his care when appropriate and referring him to a pain specialist.

As part of her role to develop a treatment plan for Plaintiff's back pain, Peters reviewed Dr. Mann's recommendation for a physiatry consult. Because Plaintiff's medical tests were somewhat aged at this point, Peters also ordered new testing. In late October 2017, Dr. Chyatte, the neurosurgeon who reviewed the tests, agreed that Plaintiff did not need surgery, but suggested "[c]onsider referral to Pain and Spine." (Docket #34-1 at 34). Dr. Chyatte never specifically recommended that Plaintiff see a physiatrist. Peters also considered that Plaintiff had undergone physical therapy less than a year before, and he had told Peters that the therapy did not work.

Peters determined that a conservative treatment plan was appropriate in light of the doctors' recommendations and Plaintiff's history of noncompliance with treatment. Plaintiff was upset by this and complained vociferously of pain, the need for surgery, and a physiatry appointment. He filed many health services requests to this effect.

As the health services manager, Lutsey only manages the provision of healthcare at GBCI. She does not prescribe medicine or make referrals, and only rarely provides direct care to inmates. She never treated Plaintiff directly. Her only interaction with Plaintiff was to respond to one of his

health services requests and to approve one of his requests for additional pillows, as part of one of her separate committee assignments.

On these facts, neither Defendant violated Plaintiff's constitutional rights. Prisoners are entitled to a minimal level of healthcare while in custody. *Petties v. Carter*, 836 F.3d 722, 727–28 (7th Cir. 2016). The Eighth Amendment is violated when the prisoner shows that they "suffered from an objectively serious medical condition," and that "the individual defendant was deliberately indifferent to that condition." *Id.* at 728. The *Gayton* case neatly summarizes a deliberate indifference claim:

> [T]he plaintiff must show that: (1) [he] had an objectively serious medical condition; (2) the defendants knew of the condition and were deliberately indifferent to treating h[im]; and (3) this indifference caused h[im] some injury. An objectively serious medical condition is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention. A medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated.
>
> With regard to the deliberate indifference prong, the plaintiff must show that the official acted with the requisite culpable state of mind. This inquiry has two components. The official must have subjective knowledge of the risk to the inmate's health, and the official also must disregard that risk. Evidence that the official acted negligently is insufficient to prove deliberate indifference. Rather, deliberate indifference is simply a synonym for intentional or reckless conduct, and that reckless describes conduct so dangerous that the deliberate nature of the defendant's actions can be inferred. Simply put, an official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Even if a defendant recognizes the substantial risk, he is free from

liability if he responded reasonably to the risk, even if the harm ultimately was not averted.

*Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010) (citations and quotations omitted). In sum, "deliberate indifference means actual, personal knowledge of a serious risk, coupled with the lack of any reasonable response to it." *Ayoubi v. Dart*, 724 F. App'x 470, 474 (7th Cir. 2018).

Assuming *arguendo* that Plaintiff's pain qualified as a serious medical condition, Peters comes nowhere close to displaying deliberate indifference to his treatment needs. Deliberate indifference claims against medical personnel cannot be sustained on "negligence or even malpractice." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). Rather, "[t]he federal courts will not interfere with a [provider's] decision to pursue a particular course of treatment unless that decision represents so significant a departure from accepted professional standards or practices that it calls into question whether the [provider] actually was exercising [her] professional judgment." Peters clearly exercised her professional judgment again and again when dealing with Plaintiff. She engaged in a constant, varied, and determined campaign of treatment in an attempt to address his pain, though she would not prescribe the narcotics he desired.

As to Lutsey, she lacks the required personal involvement to even implicate Plaintiff's Eighth Amendment rights. *Burks v. Raemisch*, 555 F.3d 592, 593–94 (7th Cir. 2009) ("Section 1983 does not establish a system of vicarious responsibility. Liability depends on each defendant's knowledge and actions, not on the knowledge or actions of persons they supervise.") (citation omitted). She did not treat Plaintiff directly and, as relevant to this case, merely responded to one of his written complaints about his healthcare.

Plaintiff responded to each of Defendants' motions separately. Both sets of responsive materials include a brief, a collection of exhibits, and a set of "findings of fact." These "findings of fact" are affirmative statements of fact, comprising either citations to Plaintiff's deposition in this case, or a listing of exhibits with some explanatory parentheticals. *See* (Docket #47). The briefs also contain statements of fact presented in prose form. *See* (Docket #46 at 2–5).

Nowhere in Plaintiff's submissions, however, does he provide a response to Defendants' statements of fact that complies with the applicable procedural rules. Federal Rule of Civil Procedure 56 and Civil Local Rule 56 describe in detail the form and contents of a proper summary judgment submission. In particular, they state that a party opposing a summary judgment motion must file

> (B) a concise response to the moving party's statement of facts that must contain:
>
> (i) a reproduction of each numbered paragraph in the moving party's statement of facts followed by a response to each paragraph, including, in the case of any disagreement, specific references to the affidavits, declarations, parts of the record, and other supporting materials relied upon[.]

Civ. L. R. 56(b)(2)(B)(i); *see* Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record[.]").

Rather than comply with this rule, Plaintiff simply provides his own competing set of asserted facts. He fails to address each of Defendants' facts individually and cite appropriate evidence in support of any facts which he might dispute. *See also* (Docket #50 and #53) (Defendants' responses to Plaintiff's statements of facts, which demonstrate the proper method for

responding to proposed findings of fact). This is unacceptable, in light of the fact that Plaintiff was provided a copy of the procedural rules three times, once by the Court, (Docket #19), and once each by the Defendants themselves along with their summary judgment motions, (Docket #30 at 3–13 and Docket #38 at 3–8).

Despite being repeatedly warned of the strictures of summary judgment procedure, Plaintiff ignored those rules by failing to properly dispute Defendants' proffered facts with citations to relevant, admissible evidence. *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). Though the Court is required to liberally construe a *pro se* plaintiff's filings, it cannot act as his lawyer, and it cannot delve through the record to find favorable evidence for him. Even if such relevant and favorable evidence could be located in the record, the Court cannot compile that evidence for him and construct legal or factual arguments on his behalf. In other words, the Court cannot abandon its role as a neutral decisionmaker and become an advocate for one party. Thus, the Court deems Defendants' facts undisputed for purposes of deciding their motions for summary judgment. *See* Fed. R. Civ. P. 56(e); Civ. L. R. 56(b)(4); *Hill v. Thalacker*, 210 F. App'x 513, 515 (7th Cir. 2006) (noting that district courts have discretion to enforce procedural rules against *pro se* litigants).

Based on the undisputed facts presented by Defendants, summary judgment is clearly appropriate in their favor. The Court will nevertheless indulge Plaintiff's arguments to the contrary located in his legal briefs. As to Peters, Plaintiff emphasizes that this case is about her role in allegedly delaying his referral to a physiatrist. (Docket #46 at 9). He is adamant that Dr. Chyatte had made an unequivocal referral for a physiatrist, that Peters refused to schedule the appointment despite the referral, and that this is

sufficient to show deliberate indifference. Plaintiff is wrong on all accounts. Dr. Chyatte said that Plaintiff's care providers should *consider* referring him to a physiatrist. This is similar to Dr. Mann's prior statement, which recommended the same treatment. Peters did consider such a referral, but she determined that other treatment options were more appropriate at the time. Indeed, she made numerous attempts to alleviate Plaintiff's pain in new and different ways. The fact that none was apparently successful does not show that she was indifferent to Plaintiff's medical needs. To the contrary, the entire course of care Peters provided to Plaintiff demonstrates careful consideration and patience.[1]

Plaintiff presents two arguments in favor of Lutsey's liability. First, he says that she had the authority and a responsibility to oversee his care and could have ordered Peters to treat him differently. In essence, Plaintiff contends that Lutsey should have acted on the doctors' recommendations in light of Peters' failure to do so. But as noted above, Plaintiff misunderstands what the doctors said. They made suggestions, not referrals in themselves. Second, Plaintiff asserts that Lutsey knew that Plaintiff had a previously scheduled physiatry appointment and hid that fact from Peters. The evidence demonstrates, however, that Peters independently knew of the doctors' recommendations and Plaintiff's prior appointment.

The theme of this case is Plaintiff's displeasure in not getting the treatment he wanted. The Seventh Circuit holds, however, that "[a]

---

[1] Plaintiff further argues that Peters changed her course of treatment after being served with his lawsuit. (Docket #46 at 9–10). But as Peters explains, (Docket #51 at 3–4), the timing for this assertion does not fit; Plaintiff's plan of care was changed before Peters was served.

prisoner's dissatisfaction with a [provider's] prescribed course of treatment does not give rise to a constitutional claim unless the medical treatment is so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996). Nothing in record demonstrates that Plaintiff was intentionally mistreated by Defendants.

Further, the fact that Plaintiff's care provider at Fox Lake determined that a physiatry appointment should be scheduled does not automatically mean that either Peters or Lutsey were wrong in taking a different course. A mere difference of opinion amongst medical providers does not support a finding of deliberate indifference. *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006). Rather, Plaintiff needed to show that Defendants' care was so bad that a reasonable jury could believe Defendants failed to exercise *any* medical judgment in providing that care. *Id.* He did not do so.

In light of the foregoing, Defendants have exhibited their entitlement to summary judgment. The Court will, therefore, grant their motions to that effect and dismiss Plaintiff's claims, and this action generally, with prejudice. The Court will also grant a related motion to seal filed by Peters. (Docket #37).[2]

Accordingly,

**IT IS ORDERED** that Defendant Jean Lutsey's motion for summary judgment (Docket #30) be and the same is hereby **GRANTED**;

---

[2] On June 20, 2019, Plaintiff filed a motion seeking to be separated from Peters and transferred to a new prison. (Docket #57). Even assuming the Court would entertain such interference in matters of prison administration, which it would not, this action is being dismissed. The motion will be denied as moot.

**IT IS FURTHER ORDERED** that Defendant Susan Peters' motion for summary judgment (Docket #38) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Defendant Susan Peters' motion to seal (Docket #37) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff's motion for separation from Defendant Susan Peters (Docket #57) be and the same is hereby **DENIED as moot**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 24th day of July, 2019.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge